*451 OPINION
GARTH, Circuit Judge:
This appeal arose out of the conversion of Plaintiffs’ “defined benefit” pension plans into a “cash balance” plan. J. Michael Charles, Maurice W. Ward, Jr., Joseph J. Fink, Jr., and Thomas S. Troup (collectively, “Plaintiffs”) filed two separate class actions against Pepeo Holdings, Inc., Conectiv, and Pepeo Holdings Retirement Plan (collectively, “Defendants”) alleging that the conversion violated the Employee Retirement Income Security Act of 1974 (“ERISA”). The two actions, Charles v. Pepco Holdings and Troup v. Pepco Holdings, were consolidated on July 20, 2006.
Although the original complaints raised various claims, only one issue remains at dispute on appeal: whether Defendants violated section 204(h) of ERISA by failing to provide timely and adequate notice of the “cash balance” amendment.[1] Because we find that notice was not required, we need not decide the questions of timeliness or adequacy. Accordingly, we will affirm.
I.
Prior to 1998, Plaintiffs were beneficiaries of “defined benefit” pension plans at Atlantic City Electric Company and at Delmarva Power & Light Company. The two companies merged in March 1998 to form Conectiv,[2] and on April 23, 1998, the new Board of Directors amended the pension plans and adopted a “cash balance” plan, effective January 1,1999. This “cash balance” plan provided employees with a hypothetical account balance that accrued pay credits and interest credits, the latter of which was tied to the 30-year Treasury Bond rate.[3] Certain employees remained eligible to be “grandfathered” under the old pension plan, but Plaintiffs were not among them.
Having adopted the amended plan on April 23, 1998, Conectiv mailed a “Facts” newsletter and a decision kit to its employees in May 1998, informing them of the amendment to the pension plan and explaining the “cash balance” plan. Additional letters with similar content were circulated in December 1998 and again in June 1999.
On December 10, 1999, the Vice President of Human Resources approved a finalized version of the amended plan “pursuant to the adoption of the Plan by the Personnel & Compensation Committee of the Board of Directors ... on April 23, 1998.” J.A. 861.
In September 2005, Plaintiffs commenced litigation proceedings challenging the validity of the new pension plan under ERISA. On September 19, 2007, the District Court granted summary judgment for the Defendants. Plaintiffs filed a timely notice of appeal.
II.
We exercise plenary review over the District Court’s grant of summary judgment. McGowan v. NJR Serv. Corp., 423 F.3d 241, 244 (3d Cir.2005). Jurisdiction is *452 predicated on 28 U.S.C. § 1291, which provides that “[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States.” The District Court had federal question jurisdiction under 28 U.S.C. § 1331.
At the time of the amendment, section 204(h) stated that a pension plan
may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice [to each participant].
29 U.S.C. § 1054(h)(1) (1997-2001).[4] Under this provision, notice was required only if the amendment was “reasonably expected to [significantly reduce] the amount of the future annual benefit commencing at normal retirement age ... taking into account the relevant facts and circumstances at the time the amendment was adopted.” 26 C.F.R. § 1.411(d)-6T (1996).
Accordingly, two principles are relevant in determining whether the plan amendment led to a “significant reduction,” such that notice was required. The first is that each plaintiff, as distinct from a group or class, must show that he or she personally would experience such a significant reduction. The second is that the Treasury Regulations in effect at the time the plan was amended, April 23, 1998, differed materially from the 204(h) regulation.
Under the Regulations in effect on April 23, 1998, “an amendment to a defined benefit plan affects the rate of future benefit accrual only if it is reasonably expected to change the amount of the future annual benefit commencing at normal retirement age [of 65].” 26 C.F.R. § 1.411(d)-6T (Q & A 5) (emphasis added). Importantly, this determination must “tak[e] into account the relevant facts and circumstances at the time the amendment is adopted.” Id. (Q & A 7) (emphasis added). Thus, in determining whether no significant reduction was to be reasonably expected, and therefore no need for notice to be given, the District Court examined the individual Plaintiffs’ benefits and the relevant facts and circumstances as of April 23, 1998.
The parties dispute the appropriate method for calculating the impact of the “cash balance” amendment. At trial, Defendants’ expert witness, Ethan Kra, calculated that future benefits at retirement for each individual would be expected to increase under the new “cash balance” plan if salaries were held constant at 1999 levels. His calculations were based on the facts and circumstances knowable as of April 23, 1998.[5] Plaintiffs attacked Era’s assumption that wages would experience zero growth, and offered instead their own *453 expert analysis showing that future benefits decreased when using a 4.5% salary growth assumption (a figure used in Defendants’ 1999 SEC filings for aggregate labor costs).[6]
We are not convinced by the projections provided by Plaintiffs’ expert, Claude Pou-lin. We find Era’s analysis on the whole to be more persuasive.[7] Poulin’s assumption that Defendants’ labor costs would increase by 4.5% each year from 1999 until the Plaintiffs retired at age 65 does not explain why management employees’ future salaries could be expected to keep pace with the company’s labor costs for all employees. See note 6, supra. Nor does Poulin explain how, on April 23, 1998, Defendants were to reasonably predict each of the Plaintiffs’ salaries until each of their respective retirements. Indeed, in the preceding five-year period from 1994 to 1999, one Plaintiff saw nearly zero wage increase, from $56,237.84 to $56,824.37, and another received average wage increases of only 1.4% per annum, from $59,267.75 to $63,522.62.[8]
Having determined that the “cash balance” amendment would not have been reasonably expected to result in a “significant reduction in the rate of future benefit accrual,” we need not address the issue of whether the “Facts” newsletter, the decision kit, and the additional letters constituted timely and adequate notice. The regulations, as we have stated, provided that no notice was required.
III.
For the foregoing reasons, we will affirm the District Court’s order filed September 19, 2007.

. Plaintiffs also argued on appeal that Defendants violated the anti-backloading requirement under section 204(b)(1) of ERISA, but conceded in their reply brief and at oral argument that IRS Revenue Ruling 2008-7, issued on February 1, 2008, disposed of this claim. We therefore do not address backloading. Plaintiffs' complaints also alleged violations of sections 204(b)(1)(G) and 204(b)(1)(H) of ERISA, but these issues were dismissed by the District Court and were not raised on appeal.

. On August 1, 2002, Conectiv became a wholly owned subsidiary of Pepeo Holdings.

. For a more complete description of “cash balance” plans, and how they differ from traditional "defined benefit" plans, see Register v. PNC Fin. Servs. Group, Inc., 477 F.3d 56, 60-61 (3d Cir.2007).

. As we recently held in Register:
The district court concluded that [the defendant] satisfied the section 1054(h) notice requirements applicable at the time of the conversion and we agree. The brochure set forth the plan amendment and the effective date. That explanation was all that was required. Contrary to appellants' argument, the Treasury Regulations at the time of the amendment were clear that [the defendant] was not required to discuss "how the individual benefit of each participant or alternate payee will be affected by the amendment.”
477 F.3d at 73 (quoting 26 C.F.R. § 1.411(d)-6T (1996)) (emphasis added). Although section 204(h) was later amended in 2002 to require a more robust form of notice, this amended requirement was not in effect in 1998. Id. at 72 n. 14; Gillis v. SPX Corp. Individual Account Ret. Plan, 511 F.3d 58, 63 n. 4 (1st Cir.2007).

. Defendants recited these calculations in two charts, both of which showed appreciable increases under the “cash balance" plan for each of the four Plaintiffs. See Appellees’ Br. 28.

. The aggregate labor costs included wages of union workers, who were not covered under this pension plan. Plaintiffs also attempted to project future wage growth based on actual salary data from 1999 to 2006, but this information would not have been available in 1998 when the amendment was adopted.

. The dissent accuses us of engaging in "status quo bias,” but the dissent ignores the fundamental fact that Plaintiffs had (and failed to meet) the burden of proof. See, e.g., Dissenting Op. 455 (suggesting instead that Defendants had the burden to justify the reasonableness of relying only on knowable wage figures). Plaintiffs have provided no basis in the record to establish the reasonableness of any alternative wage growth rate.

. The dissent correctly notes that the other two Plaintiffs in this case happened to see higher wage increases over this time period. But that does not diminish our underlying point that wage growth is inherently unpredictable, and varied greatly even among these Plaintiffs. See also David Leonhardt, Next Victim of Turmoil May Be Your Salary, N.Y. Times, Oct. 14, 2008 (reporting that median pay in 2008 is lower than it was in 2000, and noting that it may end up more than 5 percent lower by 2010).